1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT

6                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   ROBERT LEE ROBINS,                )        No. C 03-0797 JSW (PR)
                                       )
9              Plaintiff,             )        **ORDER GRANTING**
                                       )        **MOTION FOR SUMMARY**
10     vs.                             )        **JUDGMENT AND MOTION**
                                       )        **TO DISMISS**
11  ANTHONY A. LAMARQUE, et al.,       )
                                       )
12             Defendant.              )        (Docket No. 53)
                                       )
13  _____ )

14

15                             **INTRODUCTION**

16          This is a *pro se* section 1983 civil rights action filed by a prisoner at Salinas

17  Valley State Prison ("SVSP").  Defendants Capt. A. Tucker, Lieutenant W.

18  Wilson, Sergeant Clarence Van Hoose, Correctional Counselor Gomez, Officer J.

19  Crabtree, Officer Jose Garcia, Officer Dennis La Lanne, Officer M. Melendez,

20  Officer R. Cheney, Officer Michael Meyer, Officer J. Valadao, Officer Dannon

21  Carn, Officer Eugene Black, and Sergeant K. Traynham have moved for summary

22  judgment and to dismiss Plaintiff's claims against Defendant Sergeant Peralez.

23  Plaintiff has filed an opposition.  Defendants then filed a reply.  For the reasons

24  stated herein, Defendants' motion for summary judgment and motion to dismiss

25  will be GRANTED.

26                            **BACKGROUND**

27          The following facts are based on the parties' declarations, prison records, a

28  video recording, and a declaration by Kathleen Ochoa, the authorized custodian of

    records at SVSP.  The facts are undisputed unless otherwise noted.

           On March 23, 2002, SVSP prison officials conducted an inmate count and

saw that Plaintiff and his cellmate, Foster, had covered the windows of their cell door with paper. (Decl. W. Wilson in Supp. of Mot. for Summ. J. ("Wilson Decl.") ¶ 5; Decl. Kyle Lewis in Supp. of Mot. for Summ. J. ("Lewis Decl."), Ex. B at AGO-02.) The covering prevented them from being counted. (*Id.* at AGO-13.) Defendants Van Hoose and Traynham asked Foster to take down the coverings, but Foster refused. (*Id.*) Van Hoose ordered Foster to agree to be handcuffed and leave the cell, but again Foster refused. (*Id.* at AGO-14.)

Plaintiff, who had been lying on the top bunk, approached the door. Van Hoose then ordered Plaintiff to agree to be handcuffed and leave the cell. (*Id.*) Plaintiff ignored the order, instead turning around and walking to the back of the cell. (*Id.*) Van Hoose contacted Defendant Wilson, who told Van Hoose and Traynham to assemble a "cell-extraction" teams. (*Id.*) The extraction team consisted of Defendants Wilson, Van Hoose, Traynham, Crabtree, Garcia, La Lanne, Melendez, Cheney, Meyer, Valadao, and Carn. (*Id.*) Plaintiff alleges that Defendant Peralez was also a member of the extraction team. (Compl. at 3.)

Approximately two hours later, the extraction team came to the cell door. Wilson ordered the inmates to remove the papers covering the cell windows and told them that if they did not comply, an extraction team would use "pepper spray" and/or physical force. (*Id.*; Wilson Decl. ¶ 11.) Plaintiff removed the papers from the windows; however, Wilson saw a prison-issued bedsheet hanging across the entire cell, obscuring the back of the cell. (Lewis Decl., Ex. B at AGO-14; Wilson Decl. ¶ 12.)

Wilson saw Foster in silhouette behind the bedsheet, apparently wrapping a prison-issued towel around his face and head in an attempt to defeat the effects of the pepper spray. (*Id.*) Wilson ordered Foster and Plaintiff to remove the bedsheet and agree to be handcuffed. (Lewis Decl., Ex. B at AGO-14; Wilson Decl. ¶ 13.) Both inmates ignored the order. (*Id.*) Wilson then ordered Plaintiff to go to the back of the cell and get down on his knees, but Plaintiff ignored him. (*Id.*) After

2

both inmates refused additional orders to be handcuffed and take down the bedsheet, Wilson instructed Traynham to use pepper spray.  (Lewis Decl., Ex. B at AGO-15; Wilson Decl. ¶ 14.)

Traynham threw two smoke grenades into the cell through the food port while Wilson sprayed pepper spray inside the cell through the food port.  (Lewis Decl., Ex. B at AGO-15; Wilson Decl. ¶ 15.)  Wilson again ordered both inmates to take down the sheet and prepare for handcuffing, but again they refused and again they were pepper-sprayed.  (Wilson Decl. ¶ 15.)  Wilson again ordered both inmates to take down the sheet, remove their clothing, and prepare for a full-body search.  (Ex. B at AGO-15; Wilson Decl. ¶ 15.)  This time, both inmates complied.  (*Id.*)  They were then searched, handcuffed, and led to an outdoor shower where they rinsed the pepper spray off their faces.  (Ex. B at AGO-15; Wilson Decl. ¶ 16.)  Both inmates were medically examined and cleared to be re-housed.  (Ex. B at AGO-15; Wilson Decl. ¶ 18.)  Plaintiff, however, was observed to have high blood pressure and was taken to the Correctional Treatment Center (CTC) for observation and released the same day.  (Ex. B at AGO-17.)  Defendant Black took Plaintiff from the prison to the waiting ambulance.  (*Id.* at AGO-35.)  While the inmates were being decontaminated, Wilson ordered officers to decontaminate the cell.  (*Id.* at AGO-21, 24; Wilson Decl. ¶ 17.)

On April 17, 2002, Plaintiff was placed in administrative segregation pending the outcome of an investigation into Plaintiff's grievances of staff misconduct.  (Compl. at 3-E; Ex. 12.)  The administrative segregation form was signed by Defendant Tucker.  (Compl., Ex. 12.)  Plaintiff alleges that Defendant Gomez was also a member of the committee that authorized his placement into administrative segregation.  (*Id.* at 3-E.)

Plaintiff's version of the facts differs in that he claims that, after the cell extraction team arrived, he took the papers off the windows and told Defendants he was willing to be handcuffed and leave the cell, but was denied the opportunity

and pepper-sprayed.  (Compl. at 3-B.)  He also disputes that his cell was cleaned of pepper spray residue.  (*Id.* at 3-D.)

In a separate incident that occurred on March 6, 2002, inmates were required to approach their cell doors while completely naked as part of a strip search.  (*Id.* at 3.)  Peralez, a correctional officer at SVSP, walked up to the inmates' cell doors — including Plaintiff's door — and shined a flashlight on their genitals.  (*Id.*)

**DISCUSSION**

## I.    <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (citations omitted).  When the moving party bears the burden of proof and persuasion on an issue at trial, it

4

1    must at summary judgment "show that 'the evidence is so powerful that no

2    reasonable jury would be free to disbelieve it.'"  *Shakur v. Schriro*, 514 F.3d 878,

3    890 (9th Cir. 2008).

4         The court's function on a summary judgment motion is not to make

5    credibility determinations or weigh conflicting evidence with respect to a disputed

6    material fact.  *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d

7    626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable

8    to the nonmoving party, and the inferences to be drawn from the facts must be

9    viewed in a light most favorable to the nonmoving party.  *See id.* at 631.

10        A verified complaint may be used as an opposing affidavit under Rule 56,

11   as long as it is based on personal knowledge and sets forth specific facts

12   admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11

13   (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where,

14   even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated

15   under penalty of perjury that contents were true and correct, and allegations were

16   not based purely on his belief but on his personal knowledge).  Plaintiff's

17   complaint was signed under penalty of perjury and therefore may be considered in

18   deciding the motion for summary judgment.

19        Defendants argue that the claim against Peralez must be dismissed for lack

20   of service and that they are entitled to summary judgment as to the remaining

21   claims.  Defendants additionally argue that they are entitled to qualified immunity.

22   As the claims can be adjudicated on the merits, the Court will not address qualified

23   immunity.

**II.    Eighth Amendment Claims**

25        Plaintiff claims that the use of pepper spray during the cell extraction

26   violated his Eighth Amendment rights.  He also claims that Defendants were

27   deliberately indifferent both to his health and to his safety.

28

**A.    Excessive Force**

Plaintiff alleges that Defendants Wilson, Van Hoose, Crabtree, Garcia, La Lanne, Melendez, Cheney, Meyer, Valadao, Carn, Black, Peralez, and Traynham used force in the March 23, 2002 cell extraction "maliciously and sadistically for the purpose of causing Plaintiff injury and harm" in violation of his Eighth Amendment rights.  (Compl. at 3-B.)

**1.    Excessive Force Standard**

The treatment a prisoner receives in prison is subject to scrutiny under the Eighth Amendment.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official possesses a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 824, 834 (1994).  The state of mind required for an excessive force claim is that the prison official applied force "maliciously and sadistically" so as to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *accord Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  In evaluating whether the amount of force used was necessary, a court must evaluate such factors as: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the extent of any injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response.  *Hudson*, 503 U.S. at 7.

**2.    Analysis**

The undisputed evidence shows that the windows of the cell were initially covered.  In response, Defendants assembled a cell extraction team in order to force Plaintiff and Foster to comply with a lawful order.  Both the video of the cell extraction and Defendants' declarations are in accord: Defendants made repeated requests for Plaintiff and his cell-mate to take down a bedsheet obscuring the back half of the cell.  (Lewis Decl., Ex. B at AGO-14-15; Wilson Decl. ¶ 13-14; Decl.

1   Kyle Lewis in Supp. of Defs.' Reply ("Lewis Reply Decl."), Ex. A.)

2       Plaintiff does not deny that he initially refused to comply with orders to

3   remove the papers covering the windows.  He claims, however, that after he

4   removed the papers from the window, he told Defendants he was willing to come

5   out of the cell and submit to being handcuffed.  (Pl.'s Opp. to Mot. for Summ. J.

6   ("Opp.") at 2; Compl. at 3-B.)  The video shows that Defendants had a colloquy

7   with someone in the cell through the closed cell door.  The video's sound quality is

8   poor and the camera remains at a distance from the cell; as such, it is unclear who

9   in the cell was talking and what he was saying.  At summary judgment, however,

10  conflicts over a material fact — including reasonable inferences derived therefrom

11  — must be resolved in favor of the non-moving party; here, the Plaintiff.  *T.W.*

12  *Electric Serv*., 809 F.2d at 631.  As such, the Court must assume for the purposes

13  of this motion that Plaintiff's assertion that he was compliant after he removed the

14  papers from the window is true.

15      Plaintiff fails to account for the actions of his cellmate.  Accepting as true

16  Plaintiff's assertions that he was compliant, Defendants make uncontested

17  assertions that Foster was not.  Defendants were wary of what Foster was doing

18  behind the sheet.  They advance the reasonable theory, given Foster's agitation and

19  refusal to comply with orders, that he could have been preparing a weapon to use

20  against Defendants should they try to enter the cell.  (Wilson Decl. ¶ 12.)

21      The fact that Plaintiff was also the recipient of this force does not give rise

22  to a constitutional violation.  "[T]he Eighth Amendment does not require a further

23  showing that the intent to punish needs to be directed at a specific individual."

24  *Robins v. Meecham*, 60 F.3d 1436, 1440 (9th Cir. 1995).  Here, the inquiry is not

25  whether the use of pepper spray and smoke grenades was excessive *as to Plaintiff*,

26  but rather whether the use of pepper spray and smoke grenades was excessive *at*

27  *all*.  "Excessive force directed at one prisoner can also establish a cause of action

28  for harm that befalls other prisoners."  *Clement v. Gomez*, 298 F.3d 898, 905 n.3

7

(9th Cir. 2002) (citing *Robins*, 60 F.3d at 1441-42).  The converse, then, must also be true: if force directed at one prisoner was not "excessive," then harm befalling a nearby prisoner could not establish a cause of action as to him.  *See Thomas v. Mendez*, No. CV-07-3174-SJO (MAN), 2009 WL 89116, at *5 (C.D. Cal. Jan. 13, 2009) ("plaintiff does not contend that the force used by the officers was excessive as to [his cellmate]; he only contends that it was excessive as to *him*. Under *Robins*, this is not enough to state an Eighth Amendment excessive force claim").

Taking Plaintiff's evidence as true — that he became compliant and willing to leave the cell after removing the papers from the window — still leaves Defendants' unchallenged assertion that Foster remained non-compliant.  The question then becomes whether Defendants' actions, regardless of their target, were undertaken in good faith or for the purpose of causing harm.

Applying the five factors from *Hudson* to determine whether the amount of force used was necessary, and thus whether force was used in good faith, Defendants used an amount of force that was necessary under the circumstances. *Hudson*, 503 U.S. at 7.  Defendants' need to maintain order in the prison by counting inmates and ensuring the safety of inmates and staff, combined with their reasonable belief that Foster may have been preparing a weapon to use against them, created a need for the application of force.  Prison officials are accorded "wide-ranging deference" when prescribing "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Whitley*, 475 U.S. at 322; s*ee also Bell v. Wolfish*, 441 U.S. 520, 547 (1979).  The amount of force used — smoke grenades and two bursts of pepper spray to disorient Plaintiff and Foster — was reasonably related to the need to extract them.  The injuries suffered were not severe or permanent.

The severity of the response was tempered by repeated requests to take down the bedsheet and submit to handcuffing, reserving the use of pepper spray as a last resort.  *See Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (using small amounts of tear gas was not excessive "if a prisoner refuses after adequate

8

warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required"). The use of pepper spray was also tempered by the quick use of cold water to try to neutralize the effects of the pepper spray once the extraction was complete, the cell occupants were secured, and the need for force no longer existed.

Even if Plaintiff became compliant after removing the papers from the window, and was willing to come out of the cell at that point, there was no longer an opportunity to do so safely. As Defendants suspected that Foster could have a weapon, and because Foster was the "agitated one," Defendants had to control Foster before they opened the cell door and let Plaintiff out. (*See* Compl., Ex. 28.) Under these circumstances, Defendants' actions were undertaken "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6. Plaintiff has not shown that Defendants refused to let him out of the cell before using pepper spray "maliciously and sadistically for the very purpose of causing harm." *See id.*

Even viewing the evidence in a light most favorable to the Plaintiff, Defendants' use of force to extract Plaintiff and Foster from their cell did not violate the Eighth Amendment. Accordingly, Defendants' motion for summary judgment on this claim will be granted.

### B. Deliberate Indifference

Plaintiff alleges that Defendants Wilson, Van Hoose, Crabtree, Garcia, La Lanne, Melendez, Cheney, Meyer, Valadao, Carn, Black, Peralez, and Traynham were deliberately indifferent to his medical needs by participating in the cell extraction in which pepper spray and smoke grenades were used, despite the fact that the had a heart condition. He also contends that they were deliberately indifferent to his safety by returning him to a cell that was not decontaminated of pepper spray.

### 1. Medical Needs

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See*

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).  A prison official must know that a prisoner faces a substantial risk of serious harm and must disregard that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U. S. 825, 837 (1994) (equating standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."  *Id*.

Medical records indicate that Plaintiff had a history of hypertension prior to the cell extraction.  (Lewis Decl., Ex. H at AGO-53.)  But Plaintiff provides no evidence that Defendants knew about his hypertension before they used pepper spray and smoke grenades.  Indeed, Plaintiff acknowledges that "officers failed to check [his] medical records before spraying."  (Compl., Ex. 9.)  To the extent that Plaintiff contends that Defendants *should have* investigated his medical history, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" so as to violate the Eighth Amendment.  *Farmer*, 511 U.S. at 838.

If Plaintiff means to claim that Defendants ignored his medical needs after using pepper spray, the record shows that Plaintiff was almost immediately treated for the effects of the pepper spray.  Plaintiff was evaluated and taken to the CTC for elevated blood pressure, then released.  (Lewis Decl., Ex. B at AGO-17.)  The next day, Plaintiff complained of burning chest pain, was again seen by a doctor, and returned to custody.  (Compl., Ex. 32.)  Plaintiff was seen by a physician, evaluated, and sent back to prison.  Such "consistently responsive" treatment does not raise a claim of deliberate indifference.  *See Toguchi v. Chung*, 391 F.3d 1051,

1061 (9th Cir. 2004).

There is no evidence from which to conclude that Defendants used pepper spray and smoke grenades in conscious disregard of knowledge of Plaintiff's heart condition, or that Plaintiff's post-exposure injuries went untreated. As such, Defendants are entitled to summary judgment on this issue.

## 2. Cell Condition

The conditions of a prisoner's confinement may give rise to an Eighth Amendment claim, but "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted). The state of mind required by prison officials for denial of humane prison conditions is, like medical care, deliberate indifference. *Id.* at 303.

Plaintiff claims that, upon his return to his cell, pepper spray residue had not been cleaned, requiring him to "suffer punishment" for ten days. (Compl. at 3-D.) Plaintiff does not state which Defendants he believes are responsible for this. The evidence shows that Defendant Wilson states that he "would have ordered" corrections officers to decontaminate the cell in accordance with his standard practice of using a fan to circulate air, causing the pepper spray to dissipate, and having staff manually wipe down pepper spray residue inside the cell. (Wilson Decl. ¶ 17.) Wilson's declaration describes only what staff members "would have" done in the ordinary course of business (*see id.*), but does not state whether staff members actually performed such tasks. Defendants Carn and Meyer, however, state in post-incident reports that they were the staff members who did in fact decontaminate the cell on the same day as the cell extraction. (Lewis Decl., Ex. B at AGO-21, 24.)

Plaintiff claims that his cell was not decontaminated at all, and that when he returned to his cell "the floor and walls were wet with the same chemicals that sent Plaintiff to C.T.C. Medical facility." (Compl. at 3-D.) Plaintiff has presented a

genuine factual dispute as to whether his cell was in fact decontaminated after the incident. When faced with direct evidence of a material fact that is in conflict, the Court must accept as true the non-movant's version of the fact. *T.W. Elec. Serv*., 809 F.2d at 631. Therefore, the Court assumes for the purposes of this motion that Plaintiff's cell was not decontaminated.

The only evidence of Defendant Wilson's involvement in the decontamination of the cell is his statement that he "would have ordered" officers to decontaminate it. (Wilson Decl. ¶ 17.) To the extent it was not decontaminated, there is no evidence from which it can be inferred that he know about it. Thus, he cannot beheld liable for the failure to decontaminate the cell. *See Farmer*, 511 U.S. at 837 (prison official can be liable for deliberate indifference only if he is aware of a risk of serious harm). There is evidence from which it can be inferred that Defendants Carn and Meyer would have known if it was not decontaminated because they were charged with decontaminating the cell.

Of course, Plaintiff must still show that the condition of the cell was "objectively, sufficiently serious" that it rose to the level of an Eighth Amendment violation. *Id.* at 834. The facts described by Plaintiff are that there was a residue of "chemicals" in the cell for ten days, and that prison officials had stripped the cell bare. (Compl. at 3-D.) Such chemicals could well have come from cleaning products used to decontaminate the cell, particularly in light of his allegation that the cell was wet. However, even assuming that the residue was from pepper-spray, there is no allegation or evidence of any injury Plaintiff suffered from the residue. The existence of pepper-spray residue in his cell for approximately 10 days does not on its own amount to sufficiently serious condition so as to rise to an Eighth Amendment violation. *See, e.g., Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir. 1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); *Holloway v. Gunnell*, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner was forced to spend two days in hot, dirty cell with no water); *Evans v. Fogg*, 466 F. Supp. 949 (S.D.N.Y. 1979) (no

12

claim stated by prisoner confined for 24 hours in refuse-strewn cell and for two days in flooded cell).

As Plaintiff has failed to allege sufficient facts to meet the objective prong of the *Farmer* test, Plaintiff has not made "a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," *Celotex*, 477 U.S. at 323, and summary judgment will be granted for Defendants on the issue of deliberate indifference to prison conditions.

## III.    Retaliation

Plaintiff advances two claims of retaliation.  First, he claims that the cell extraction was retaliation for his filing a grievance against Peralez for sexually harassing him.  (Compl. at 3-D.)  Next, he claims that his placement in administrative segregation from April 17, 2002 to June 21, 2002 was in retaliation for filing a grievance for the cell extraction.  (*Id.*)

### A.    Retaliation for Filing Sexual Harassment Grievance

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

On March 12, 2002, Plaintiff filed a CDC-602 grievance form alleging that Defendant Peralez sexually harassed him during a March 6, 2002 strip search. (Compl., Ex. 1.)  Plaintiff contends that Defendants Wilson, Van Hoose, Crabtree, Garcia, La Lanne, Melendez, Cheney, Meyer, Valadao, Carn, Black, Peralez, and Traynham performed the March 23, 2002 cell extraction as retaliation for filing this grievance.  (*Id.* at 3-D.)

While the cell extraction (the allegedly retaliatory act) is certainly adverse to Plaintiff, Plaintiff fails to show the connection between the cell extraction and the grievance filed against Peralez.  Retaliation is not established simply by

showing adverse activity by the defendant after the exercise of protected speech; rather, Plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). The undisputed evidence shows that Plaintiff and Foster were extracted from their cell because Foster refused an order to take the paper down from the windows of their cell, take down a bedsheet obscuring the cell, and agree to being handcuffed, all legitimate penological goals.

Plaintiff has not produced any evidence, aside from his own conclusory statements, that Defendants extracted Foster and him because of Plaintiff's prior sexual harassment complaint. Plaintiff has not even shown that Defendants were aware of the sexual harassment complaint. The March 12 grievance form was received by Sergeant Pasley and signed by Pasley and A. Cota, neither of whom are defendants. The simple fact that the extraction occurred after the grievance was filed does not establish that the extraction happened "because of" the grievance.

### B. Retaliation for Filing Pepper Spray Grievance

On March 31, 2002, Plaintiff filed another CDC-602 grievance form alleging that Defendants used excessive force during the cell extraction and that the cell extraction was retaliation for the prior grievance. (Compl., Ex. 8.) On April 17, 2002, Plaintiff was placed in administrative segregation. (*Id.*, Ex. 12.) Plaintiff alleges that Defendants Tucker, Gomez, and Wilson placed him in administrative segregation as retaliation for filing the March 31 grievance. (*Id.* at 3-D.)

Placement in administrative segregation could be considered adverse, but again, Plaintiff has not established that he was placed in administrative segregation *because of* his exercise of protected conduct. The form authorizing administrative segregation, though largely illegible, shows that he was not placed there for disciplinary reasons, but rather due to an investigation of staff misconduct. (Compl., Ex. 12.) The form appears to show that his placement in administrative segregation served the legitimate correctional goal of separating Plaintiff from the

14

general population while prison officials conducted an investigation into his allegations of staff misconduct.  *See Hewitt v. Helms*, 459 U.S. 460, 473 (1983).  The fact that Plaintiff was placed in administrative segregation following his grievance does not mean that the administrative segregation was punishment for the grievance.  Plaintiff has produced no evidence that administrative segregation was used "because of" the grievance.  *See Huskey*, 204 F.3d at 899 (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*; i.e., "after this, therefore because of this").

As Defendants have shown the absence of any evidence establishing one of the elements of Plaintiff's claim, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

## IV.   <u>Sexual Harassment Claim</u>

Plaintiff alleges that on March 6, 2002, Sergeant Peralez sexually harassed him, in violation of his Fourth Amendment rights, by shining a flashlight on his genitals during a strip search.  (Compl. at 3.)  A summons mailed to Peralez at SVSP by the U.S. Marshals Service was returned unexecuted because, according to SVSP, Peralez does not work there.  (Docket #19.)  As Peralez was not properly served and Plaintiff has not provided the Court with an address where she can be reached, Plaintiff's claims against her will be dismissed without prejudice under Fed. R. Civ. P. 4(m) (requiring service within 120 days after the complaint is filed).  The Court will not extend time for service, as Plaintiff has shown no good cause for the failure to provide a correct location for Peralez.  Plaintiff may file his claims against Peralez in a new action in which he serves Peralez or provides the Court with her correct location.

**CONCLUSION**

For the foregoing reasons, Defendants are entitled to judgment as a matter of law on the merits of Plaintiff's claims. Defendants' motion for summary judgment and motion to dismiss (Docket No. 53) are GRANTED. Sexual harassment claims against Peralez are DISMISSED without prejudice. Summary judgment is granted to all Defendants on all of Plaintiff's remaining claims.

The clerk shall close the file and enter judgment.

IT IS SO ORDERED.


DATED:  December 13, 2011

_____
JEFFREY S. WHITE
United States District Judge

16

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ROBINS,

            Plaintiff,

  v.

LAMARQUE ET AL et al,

            Defendant.

_____/

Case Number: CV03-00797 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 13, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Robert Lee Robins
42837 Alep Street
Lancaster, CA 93536

Dated: December 13, 2011

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk